IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Cheri Brandy Williams, | ) | Case No.:  09-70764-BGC-7 |
| | ) | |
| Debtor. | ) | |
| | | |
| Cheri Brandy Williams, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.:  09-70036 |
| | ) | |
| U.S. Department of Education; | ) | |
| Sallie Mae Servicing Corp.; | ) | |
| The University of Alabama; | ) | |
| KHEAA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

The matters before the Court are:

1. <u>KHEAA's Amended Motion for Summary Judgment</u> filed on January 25, 2011 (Docket No. 34); and

2. The <u>Amended Motion for Summary Judgment Filed by the Board of Trustees of the University of Alabama</u> filed on January 26, 2011 (Docket No. 37).

After notice, a hearing was held on March 9, 2011.  Appearing were Eric Wilson, the attorney for the debtor; McCollum Halcomb, the attorney for KHEAA; and Norma Mungenast Lemley, the attorney for The University of Alabama.

**I.  The Parties' Positions**

**A.  The Debtor**

The debtor seeks an undue hardship discharge of student loans she owes The University of Alabama and the Kentucky Higher Education Assistance Authority (KHEAA).  The debtor suffers from severe mania and bipolar disorder, which was

Case 09-70036-BGC    Doc 46    Filed 09/02/11    Entered 09/02/11 11:31:45    Desc Main
Document      Page 1 of 9

exacerbated by a physical attack in December 2008. At the time of the hearing, there were plans for her to be admitted to a hospital for treatment. The Court learned later that she was admitted, treated, and released. The debtor believes that her problems caused by her mental condition will allow her to satisfy the required criteria for an undue hardship discharge.

### B. The Creditors

Both creditors contend that the debtor cannot satisfy the requirements for an undue hardship discharge.

## II. Issues

A student loan debt is not dischargeable in bankruptcy unless, "excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Consequently, in proceedings to determine the dischargeability of a student loan, there are two issues: (1) is there a debt; and (2) if there is, would paying that debt impose an undue hardship on the debtor and the debtor's dependents.

## III. Legal Standards

### A. Section 523(a)(8)

Section 523(a)(8) of the Bankruptcy Code reads:

> (a) A discharge under section 727 ... [of the Bankruptcy Code] does not discharge an individual debtor from any debt—
>
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523.

### B. Burdens of Proof

#### 1. Proving a Debt

The creditor opposing dischargeability of a student loan debt has the initial

2

burden of proving the existence of the debt. The creditor must prove that there is a debt and that the debt is for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution. If the creditor meets that burden, the burden shifts to the debtor to prove undue hardship.

Each creditor here has proved that the debtor has an unpaid, government funded, student loan. Therefore, each has satisfied its burden under this provision. Consequently the burden shifts to the debtor to prove undue hardship.

### 2. Proving Undue Hardship

The debtor has the burden of proving "undue hardship." In Hemar Ins. Corp. of America v. Cox (In re Cox), 338 F.3d 1238 (11th Cir.2003), reh'g denied and reh'g en banc denied, 82 Fed.Appx. 220 (11th Cir.2003), cert. denied, 541 U.S. 991, 124 S.Ct. 2016, 158 L.Ed.2d 496 (2004), the Court of Appeals for the Eleventh Circuit adopted the three-part test originated by the Court of Appeals for the Second Circuit in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2nd Cir.1987), as this Circuit's test for proving "undue hardship." The per curiam opinion of the Eleventh Circuit court stated:

> [to establish "undue hardship," the debtor must show] (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Id. at 1241 (quoting Brunner v. New York State Higher Education Services Corp., 831 F.2d 395, 396 (2nd Cir.1987)).

All the courts applying the Brunner test recognize that to qualify for an undue hardship discharge of a student loan, **the debtor must satisfy all three parts of the test**.

### C. This Court Prior Opinions

The Court has had several occasions to consider nondischargeability of student loans. In re Rutherford, 317 B.R. 865 (Bankr. N.D. Ala. 2004); In re Ivory, 269 B.R. 890 (Bankr. N.D. Ala. 2001); In re White, 243 B.R. 498 (Bankr. N.D. Ala. 1999); In re O'Flaherty, 204 B.R. 793 (Bankr. N.D. Ala. 1997): In re Halverson, 189 B.R. 840 (Bankr. N.D. Ala. 1995). The law in those cases is still applicable today, and the Court relies on those decisions in support of the holdings in the instant proceeding.

### D.  Summary Judgment Standards

The standards for resolving summary judgment motions are outlined in the Eleventh Circuit Court of Appeals decision in Fitzpatrick v. City of Atlanta, 2 F.3d 1112 (11th Cir. 1993).  This Court applied those standards in this matter.

### IV.  Findings of Fact

This Court's findings of fact are limited.  As stated above, before a debtor may qualify for an undue hardship discharge of a student loan, the debtor must satisfy all three parts of the Brunner test.  The facts here indicate that the debtor cannot satisfy the first factor, that is she cannot prove, based on current income and expenses, that she cannot maintain a "minimal" standard of living if forced to repay the loans.

### A.  The Debtor's Loans

In regard to KHEAA, the parties stipulated to certain facts.  Those are:

> The debtor signed a student loan consolidation note on June 1, 2005. KHEAA is the guarantor and current holder of the note.  The amount disbursed pursuant to that note was $32,149.00.  The debtor received deferment forbearances on the consolidation loan.  The note was in a deferment status for 39 months.  The debtor made four payments on the student loan totaling $599.44.  At the time this case was filed, the debtor owed $36,079.89.  This amount has increased because interest continues to accrue on the loan.  The consolidation loan is the type of loan contemplated under 11 U.S.C. § 523(a)(8).

Stipulations of Fact, Docket No. 25 at 9, October 12, 2010.

At the hearing, counsel for the University of Alabama summarized similar facts for her client's claim.  Those are:

> No debate about that we qualified as a government loan under 523(a)(8), that we had two $2,000 loans that she took out two summers while she was in school.  Her payment plan was $75.00 monthly for 61 months beginning in April 2005.  She received a 13-month forbearance from April 2005 to 2006.  She received an economic hardship deferment from July 2005 to September 2005.  Between June 2006 to June 2008, the debtor made payments.  Prior to the bankruptcy filing she lapsed into failure to pay.  The University sent several notices.  At the time she filed bankruptcy she had paid $2,620.77.  At that point she owed $2,099.21.  That amount does not include any interest during the pendency of the bankruptcy.

Unofficial Transcript from Hearing on March 9, 2011.

4

## B. The Debtor's Income and Expenses

At that same hearing, counsel for KHEAA summarized the facts his client contends relates to issues of the debtor's income and expenses. Those are:

> According to the information she provided in her response to MSJ, she has a job and is earning $17.50 per hour, constituting annual income of $36,400.00. She has also received bonuses for not missing work and being at work timely. She has a good job and is apparently a good worker in that position. The poverty guideline at the time the adversary proceeding was filed was $10,830.00 for a single person. It has been increased by Health and Human Services to $10,890.00. Her income is 334% of the federal poverty guidelines. Common sense mandates that someone who is earning 3 1/3 times the federal poverty guidelines has income that is beyond a minimal standard of living.
>
> KHEAA believes her income is sufficient, but that the debtor should minimize her expenses. When the case was filed, the debtor had no rent expense. Sometime after the filing, she moved into an apartment and incurs $670.00 monthly in rental expense. Food expense of $600.00 monthly is extraordinary. In her response to the motion for summary judgment, the debtor has reduced her food expense to $360.00 per month. The USDA provides food plans based on the age of the debtor, the gender of the debtor, family size, etc. Even the reduction to $360 is $60 more than the liberal food budget for a single female. Under a minimal standard of living, a liberal food spending allowance is not in keeping with a minimal standard of living. The thrifty to moderate, somewhere between $140 and $300 monthly should be the allowance under a minimal standard of living.
>
> Income she stated in her amendments to Schedules I and J indicate a net monthly pay of $2,319.78, but it does not have a provision for any of the bonuses she has received in the past. $670.00 seems high for a single person apartment in Tuscaloosa.

Unofficial Transcript of Hearing March 9, 2011.

Counsel for The University of Alabama added this information:

> When looking at income versus expenses and thinking about what is ahead for her, she did have an opportunity to reaffirm her debt with her car. She has a $108 car payment that will go away in 2 years. The debtor may have to find a roommate, in Tuscaloosa there is plenty of opportunity to do that. Knowing her car debt is going to be paid in two years. Also she has a pattern of steadily increasing her income. The stipulations point out that her income goes up each year.

5

Case 09-70036-BGC    Doc 46    Filed 09/02/11    Entered 09/02/11 11:31:45    Desc Main
Document      Page 5 of 9

Unofficial Transcript of Hearing March 9, 2011.

> Counsel for the debtor responded:
>
> When the debtor filed her bankruptcy petition, she was living with her sister and had no rental expense, but there were larger food and utility expenses to compensate her sister for not having to pay rent. That situation deteriorated in large part because of her problems and she had to find a place to live. That is why she has a rental expense and she rents through the company for which she works. The food expense now verses then is $360.00 which is less than $90 per week. Her vehicle expense when she filed was $180 per month. When she reaffirmed with Wells Fargo they dropped the payment to $108.00 per month. She minimized the expense through negotiation with Wells Fargo. Those two are major differences. Her medical expenses increased from $430 to $540 per month through no fault of her own. She has decreased her auto insurance debt, but she has picked up a renter's insurance payment.

Unofficial Transcript of Hearing March 9, 2011.

### C. The Debtor's Employment

The debtor's ability to earn a living was discussed at the March 9, 2011, hearing. Counsel for the University represented:

> Ms. Williams has a degree, a high GPA, seven years of straight employment, extra bonuses for coming to work on time. She may not be employed to the extent that she would like to be and she may be having some problems, but she has been managing them with her current employer.

In response to questions from the Court, counsel for the debtor explained that the debtor has worked for the same company for seven years. The company manages real estate and apartments in Tuscaloosa, Alabama. The debtor lives in one of the apartments the company manages. It appears to the Court that the debtor's living and working situation in this regard is stable.[1]

### D. The Debtor's Medical Problems

Counsel for the debtor represented:

---

[1] If the debtor's circumstances were impacted in any way by the April 27, 2001, tornado in Tuscaloosa, Alabama, the parties shall advise the Court immediately.

Case 09-70036-BGC    Doc 46    Filed 09/02/11    Entered 09/02/11 11:31:45    Desc Main
Document      Page 6 of 9

> I think it would be disingenuous for the plaintiff to argue that KHEAA and
> The University don't have a strong case under the Brunner case as the
> facts are presently. However, the situation with Ms. Williams hinges on
> her health and it being a fluid situation. It has been to her benefit that the
> litigation has gone on this long. Her medical problems have worsened,
> her medical expenses increased, and there is a likelihood that she will be
> committed by Dr. Bruce Adkins to a mental hospital in the next couple of
> weeks. She suffers from severe mania and bipolar disorder which was
> exacerbated by a physical attack in December 2008. Our petition shows
> a potential cause of action as it relates to that attack, but I do not know
> enough of the details to inform the court as to where that litigation is. That
> medical situation could be a domino effect on the other factors. How long
> is she going to be committed? Is she still going to be able to keep her
> present employment? She could be in a situation where her income could
> be greatly reduced. Are we there now? No sir.

Unofficial Transcript of Hearing March 9, 2011.

At the March 9 hearing, the Court and the parties discussed what impact there could be if the debtor were actually admitted for treatment. Counsel for the debtor suggested that if that occurred, summary judgment should be denied. Counsel for The University and KHEAA pointed out that if the debtor became disabled after the hearing that there were procedures in place to have payment of the loans placed in deferment or in a forbearance status.

This final matter was the subject of an email sent to the Court after the March 9 hearing from counsel for KHEAA, with the consent of counsel for the debtor. The email reads, "Please let Judge Cohen know that Ms. Williams did receive treatment at a healthcare facility for her health issues but has returned to work with the same employer." Email from KHEAA Counsel to Court Personnel, April 26, 2011.[2]

### V. Conclusions of Law

The issue before the Court then becomes, what is a "minimum standard of living" and can the debtor maintain that standard if she is required to pay her student loans.

As this Court has discussed in prior opinions, for convenience some courts recognize the United States Department of Health and Human Services Poverty Guidelines as the level of a "minimum standard of living" and recognize an annual income above or below that as exceeding or falling below the "minimum standard of living." This Court disagrees as it cannot accept that a standard of living in poverty is an acceptable standard of living, below which there are levels of less comfort. But a

---

[2] Note that this email was sent one day before the Tuscaloosa tornado.

"minimum standard of living" can be defined in other ways, which this Court discussed in detail in Rutherford, Ivory, and White. Those discussions included:

> This Court believes that a minimal standard of living is a measure of comfort, supported by a level of income, sufficient to pay the costs of specific items recognized by both subjective and objective criteria as basic necessities. In Ivory v. United States (In re Ivory), 269 B.R. 890 (Bankr. N.D. Ala.2001), this Court listed the items it believes are necessary to maintain that standard of living. This Court wrote:
>
>> This Court believes that a minimal standard of living in modern American society includes these elements:
>>
>> A. People need shelter, shelter that must be furnished, maintained, kept clean, and free of pests. In most climates it also must be heated and cooled.
>>
>> B. People need basic utilities such as electricity, water, and natural gas. People need to operate electrical lights, to cook, and to refrigerate. People need water for drinking, bathing, washing, cooking, and sewer. They need telephones to communicate.
>>
>> C. People need food and personal hygiene products. They need decent clothing and footwear and the ability to clean those items when those items are dirty. They need the ability to replace them when they are worn.
>>
>> Q. People need vehicles to go to work, to go to stores, and to go to doctors. They must have insurance for and the ability to buy tags for those vehicles. They must pay for gasoline. They must have the ability to pay for routine maintenance such as oil changes and tire replacements and they must be able to pay for unexpected repairs.
>>
>> R. People must have health insurance or have the ability to pay for medical and dental expenses when they arise. People must have at least small amounts of life insurance or other financial savings for burials and other final expenses.
>>
>> S. People must have the ability to pay for some small diversion or source of recreation, even if it is just watching television or keeping a pet.

In re Rutherford, 317 B.R. 865, 877-78 (Bankr. N.D. Ala. 2004).

## VI. Conclusions

The facts demonstrate that the debtor is financially able to maintain a "minimum standard of living" as that term is defined above.[3] As of the date of the hearing, the debtor was working at a job she has held for seven years. She is paid well and is meeting her expenses. Unless her situation has changed, she has housing and is able to meet her expenses. There is no indication that she would not be able to make payments on her student loan. In contrast, her counsel argues that her medical problems may prevent her from carrying on as she has in the past. The suggestion was that if those conditions worsened, the debtor may not be able to maintain the same life style. Given the debtor's medical history, those are genuine concerns. In contrast, as the email received by the Court demonstrates, for now, those concerns have not materialized. The debtor received treatment for her problems and is back at work.

The Court, and certainly opposing parties, are sympathetic to the debtor's situation. Her problems are, like many who seek the discharge of student loans, severe. In contrast, the law, as recognized by many who have analyzed it, is very strict. The burden on a debtor is difficult. Proving "undue hardship" is difficult. In this proceeding, this Court must find that the debtor did not meet that proof. Because she did not meet the first prong of the Brunner test, her debts to these creditors cannot be discharged. Because the debtor cannot prove that her student loan debts should be discharged, under the standards required in Fitzpatrick v. City of Atlanta, 2 F.3d 1112 (11th Cir. 1993), the movants are entitled to summary judgment.

A separate order will be entered contemporaneously with this Memorandum Opinion.

Dated: September 1, 2011      /s/Benjamin Cohen
                                                       BENJAMIN COHEN
                                                       United States Bankruptcy Judge

---

[3] Because the subjective evidence is so strong, it is not necessary for the Court to apply an objective analysis to the debtor's income and expenses as it has in other cases.